**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

ROMARIO WALLER PLAINTIFF
ADC #108263

v. 5:12-cv-00081-DPM-JJV

JARED BYERS; *et al.* DEFENDANTS

**MEMORANDUM AND ORDER**

Plaintiff, Romario Waller, a prisoner at the Varner Supermax Unit of the Arkansas Department of Correction (ADC), filed this action *pro se* pursuant to 42 U.S.C. § 1983, alleging his constitutional rights were violated when he was given a major disciplinary without due process. Now before the Court are the parties' cross-Motions for Summary Judgment (Doc. Nos. 30, 33). The Court has carefully reviewed the documents submitted by the parties and makes the following findings.

## I. STANDARD OF REVIEW

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986); *Janis v. Bresheuvel*, 428 F.3d 795, 798-99 (8th Cir. 2005). Although the evidence is viewed in a light most favorable to the nonmoving party, *Nooner v. Norris*, 594 F.3d 592, 600 (8th Cir. 2010), the nonmoving party has the burden of going beyond the pleadings and by affidavit or otherwise, producing specific facts that show that there is a genuine issue for trial. *Janis*, 428 F.3d at 799. A genuine issue of fact exists if the evidence is such that it could cause a reasonable

jury to return a verdict for either party; a fact is material when it might affect the outcome of the case. *Rakes v. Life Investors Ins. Co. of Am.*, 582 F.3d 886, 894 (8th Cir. 2009).

When confronted with cross-motions for summary judgment, courts evaluate each motion independently to determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. "The filing of cross-motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the case to plenary determination on the merits." *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). In such instances, courts are bound to deny both motions if it finds that there is actually a genuine issue of material fact. *Jacobson v. Maryland Cas. Co.*, 336 F.2d 72, 75 (8th Cir. 1964).

## II. UNDISPUTED FACTS

On August 24, 2011, Plaintiff provided a urine sample for random drug screening. (Docs. No. 32 & 35 at 1.) Testing revealed low levels of creatinine, leading the lab to conclude Plaintiff's urine sample was diluted.[1] (Doc. No. 31 at 18.)

Based on the lab results, Capt. Malone charged Plaintiff with a two-count major disciplinary.

---

[1] Creatinine is a by-product of muscle metabolism that is excreted in the urine. Its measurement is routinely used clinically to evaluate kidney function. Additionally, urinary creatinine determination is an important parameter for evaluating the validity of a urine specimen for drugs of abuse detection. Because of the potential consequences of a positive drug test, an individual may be motivated to beat the drug test by various techniques. One of the most common practices used to avoid a positive drug test is the intentional consumption of excess fluid in a relatively short period of time in an effort to flush their system. This is commonly referred to as water-loading or dilution and can result in the drug being below the positive cut-off concentration. Thus, even though an individual may have recently used drugs, intentional dilution can lower the drug concentration, resulting in a false negative drug test.

*See* http://www.redwoodtoxicology.com/resources/documents/creatine_interpretation.pdf.

(Doc. Nos. 32 at 16; 35 at 8.) Defendant Jared Byers reviewed the disciplinary and referred it to a hearing officer. (Doc. Nos. 32 at 24; 35 at 9-10.) Defendant Kelvin Stewart served Plaintiff with a copy of the disciplinary. (Doc. Nos. 32 at 27; 35 at 11.)

Plaintiff appeared at his disciplinary hearing on September 1, 2011. Hearing Officer Lorie Taylor had authority to obtain any witnesses that Plaintiff requested (Doc. Nos. 32 at 29; 35 at 13-15) but Plaintiff alleges he was denied the witnesses he requested. (Doc. No. 2 at 22-23.) Plaintiff read a prepared statement into the record and said, “I request that the F-1 Report be dismissed or I am going to show out and you’ll [sic] are going to have to beat my ass and fuck that bitch, I am not finished with my statement.” (Doc. Nos. 31 at 25; 34 at 36.) Ms. Taylor stopped the statement and had Plaintiff removed from the hearing. (Doc. Nos. 32 at 48; 35 at 2.) Ms. Taylor found Plaintiff guilty on both counts and sentenced him to thirty days in punitive isolation and reduction from Class III to Class IV. (Doc. Nos. 32; 34 at 58; 35 at 21.)

**III. ANALYSIS**

Plaintiff claims he was denied due process during the disciplinary proceedings. (Doc. No. 2.) He states he was denied the right to 1) call a witness, 2) present evidence on his behalf, 3) give a statement on his behalf, and 4) his conviction was based on false evidence. *Id.* at 2-5.

The Due Process Clause protects an individual’s life, liberty, and property interests. *See McIntyre Mach., Ltd. v. Nicastro,* _ U.S. _, 131 S.Ct. 2780, 2786 (2011); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Prisoners retain due process protection against arbitrary action by the government. *Wolff v. McDonnell*, 418 U.S. 539, 555 (1974); *Goff v. Dailey*, 991 F.2d 1437, 1440 (8th Cir. 1993). However, “the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed.” *Wolff*, 418 U.S. at 556; *Garland v. Polley*, 594 F.2d

1220, 1221 (8th Cir. 1979).

Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in a criminal proceeding do not apply in disciplinary proceedings. *Wolff*, 418 U.S. at 556; *Henderson v. U.S. Parole Comm'n*, 13 F.3d 1073, 1077 (8th Cir. 1994). Due process does not entitle prison inmates to a hearing to which they are on equal footing with prison officials. *Goff*, 991 F.2d at 1441. However, "[t]he disciplinary hearing must offer the inmate an opportunity to explain his actions or otherwise defend himself before the disciplinary authority[.]" *Id.* at 1442. In *Wolff v. McDonnell*, 418 U.S. 539, the Supreme Court set forth the following procedural protections that are to be afforded inmates during disciplinary proceedings: (1) at least twenty-four hours advanced written notice of the claimed violation; (2) a written statement by the fact-finders as to the evidence relied on and the reasons for the disciplinary action taken; and (3) the right to call witnesses and present documentary evidence in defense when to do so would not be unduly hazardous to institutional safety or correctional goals. *Id.* at 558-572; *Espinoza v. Peterson*, 283 F.3d 949, 952 (8th Cir. 2002); *Jensen v. Satran*, 651 F.2d 605, 607 (8th Cir. 1981). But, importantly, the protections afforded by *Wolff* will come into play only when a protected liberty interest is implicated. *Sandin v. Conner*, 515 U.S. 472, 477-88 (1995); *Espinoza*, 283 F.3d at 951.

Therefore, before addressing whether Plaintiff was afforded the protections set forth in *Wolff*, the Court must first address whether Plaintiff was deprived of a protected liberty interest. *See Swarthout v. Cooke*, 131 U.S. 859 (2011); *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). Whether a prisoner has a protected liberty interest will depend on whether the prisoner has suffered an atypical, significant deprivation in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484–486; *Portley–El*, 288 F.3d at 1065. Here, Plaintiff's reduction in class and thirty days of punitive isolation are not "atypical and significant hardship[s]." *See e.g. Sandin*, 515

U.S. at 486 (thirty days in disciplinary segregation not atypical hardship); *Portley-El*, 288 F.3d at 1065-66 (thirty days in punitive segregation not an atypical and significant hardship); *Kennedy v. Blankenship*, 100 F.3d 640, 642 (8th Cir. 1996) (demotion from administrative segregation to thirty days punitive isolation was not an atypical and significant hardship); *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (thirty days of punitive isolation and loss of privileges not an atypical and significant hardship under *Sandin*); *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) (demotion to segregation, even without cause, is not itself an atypical and significant hardship). And Plaintiff did not lose any good time credits as a result of his conviction. (Doc. No. 33 at 5.) So there is no liberty interest at stake in this case. *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963 (1974).

Although Plaintiff raises an interesting question about being given the opportunity to call a witness from the testing lab by telephone, he simply fails to identify the implication of a liberty interest entitling him to the protections of the Due Process Clause. For this reason, the Court finds that the Defendants are entitled to summary judgment as a matter of law.

## IV. CONCLUSION

IT IS, THEREFORE, ORDERED that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 18) is DENIED.

2. Defendants' Counter Motion for Summary Judgment is GRANTED (Doc. No. 30).

3. The Complaint (Doc. No. 2) is DISMISSED with prejudice.

4. The Court certifies, pursuant to 28 U.S.C. § 1915(A)(3), that an *in forma pauperis* appeal from this Order would not be taken in good faith.

DATED this 12th day of June, 2012.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE